UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GNLV, CORP., | Case No. 2:13-CV-943 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| T. WARREN ENTERPRISES INC., et al., | |
| Defendant(s). | |

Presently before the court is plaintiff GNLV's (hereinafter "plaintiff") motion for summary judgment against all defendants on its first, second, and third claims for relief. (Doc. # 29). Defendants T. Warren Enterprises Inc., Great Vibe Entertainment, Inc., Tracie Pastore, and Yabachushyanei Bennett, (collectively hereinafter "defendants") filed a response (doc. # 35), and plaintiff filed a reply. (Doc. # 38).

Also before the court is plaintiff's motion for summary judgment against all defendants on its seventh, eighth, eleventh, and twelfth claims for relief. (Doc. # 34). Defendants filed a response (doc. # 37), and plaintiff did not file a reply.

**1. Background**

    **a. Factual background**

Plaintiff GNLV is a Nevada corporation that operates the "Golden Nugget" resort hotel casinos in Las Vegas, Nevada and Laughlin, Nevada. Since the Golden Nugget opened in 1946, plaintiff, and its predecessors-in-interest have continuously used the Golden Nugget marks in connection with their hotels, casinos, and related services.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

1. Defendant T. Warren Enterprises, Inc., f/k/a Golden Nugget Arcade, Inc., is an Ohio corporation that formerly operated a casino in Canton, Ohio. Defendant Great Vibe Entertainment, Inc. is an Ohio Corporation that uses the d/b/a of "Golden Nugget" and operates the establishment at issue in this case. Defendant Tracie Pastore is the managing member and sole shareholder of Nugget Holdings, LLC, the parent company of T. Warren Enterprises. Defendant Yabachushyanei Bennett is the owner of Great Vibe Entertainment, Inc.

### b. Procedural background

This case stems from a previous lawsuit in which the parties reached a settlement agreement. On or about October 22, 2012, plaintiff became aware that defendants were using the Golden Nugget mark in connection with a casino in Canton, Ohio. Defendants operated a casino-style business under the name "Golden Nugget Arcade, Inc." Defendants' establishment referred to itself as "The Golden Nugget," used the business name of "The Golden Nugget Arcade," and had an exterior business sign that read "Golden Nugget, You Will Love It."

Plaintiff filed with this court a complaint for damages and injunctive relief for trademark infringement, unfair competition, common law trademark infringement, deceptive trade practices, intentional interference with prospective economic advantage, and business disparagement.

This court issued a temporary restraining order on November 9, 2012, finding that defendants' continued use of the Golden Nugget mark could cause plaintiff irreparable harm. On or about December 28, 2010 plaintiff entered into a settlement agreement with defendants. Through the settlement agreement, defendants agreed to immediately and permanently cease using the Golden Nugget or similar names and marks in relation to gaming services. In exchange, and in reliance of the settlement agreement, plaintiff filed a notice of voluntary dismissal. The case was dismissed and closed on January 11, 2013.

On January 16, 2013, defendants applied for and obtained a zoning permit to operate an "internet café/skilled games business" at the same address as the original Golden Nugget casino in Canton, Ohio.

. . .

**James C. Mahan**
**U.S. District Judge**

On May 20, 2013, the Internal Revenue Service ("IRS") confiscated dozens of slot-like machines from the defendants' business. (Doc. # 29-6). The Canton Repository, a Canton, Ohio newspaper, reported the raid with the headline "IRS confiscates games from Golden Nugget." *Id.* The article lists the location of the property as 3110 Whipple Avenue NW, Canton, Oh. The address of the defendants' gaming arcade. *Id.*

On May 28, 2013, plaintiff filed the instant lawsuit alleging 12 claims for relief against the defendants:

1. Trademark infringement under 15 U.S.C. § 1114
2. Unfair competition under 15 U.S.C. § 1125(a)
3. Common law trademark infringement
4. Deceptive trade practices under N.R.S. 598.0903, *et seq*.
5. Intentional interference with prospective economic advantage
6. Business disparagement
7. Breach of contract
8. Breach of the implied covenant of good faith and fair dealing
9. Civil conspiracy
10. Intentional interference with contractual relations
11. Negligent misrepresentation
12. Fraudulent misrepresentation

**2. Legal standard**

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 3 -

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

Conversely, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**3. Discussion**

Plaintiff moves for summary judgment against all defendants on its first, second, third, seventh, eighth, eleventh, and twelfth claims for relief.

### a. Plaintiff's requests for admission

In plaintiff's reply in support of its motion for summary judgment, plaintiff alleges that because defendants failed to timely respond to the plaintiff's requests for admission, those requests are deemed admitted under Federal Rule of Civil Procedure 36(a). (Doc. # 38). The court ordered supplemental briefing regarding the requests for admission.

Under rule 36(a)(3), a matter is deemed admitted if, within 30 days, the party to whom the request is directed fails to respond with either a written answer or objection. Fed. R. Civ. P. 36(a)(3). The request for admission must be within the scope of rule 26(b)(1). *Id*. Rule 26(b)(1) limits the scope of discovery to any non-privileged matter that is relevant to a party's claim or defense. Fed. R. Civ. P. 26(b)(1).

A matter admitted under rule 36(b) is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Fed. R. Civ. P. 36(b). Such unanswered requests for admissions may be relied on as the basis for granting summary judgment. *Conlon v. U.S.*, 474 F.3d 616, 621 (9th Cir. 2007) (Citing *O'Campo v. Hardisty*, 262 F.2d 621, 624 (9th Cir. 1958)).

Plaintiff alleges seven of the requests for admission are relevant to this motion for summary judgment. (Doc. #38).

. . .

. . .

James C. Mahan
U.S. District Judge

- 5 -

Request No. 5

Admit that you entered into a settlement agreement resolving the lawsuit Case No. 2:12-cv-001915, on or about December 28, 2012.

Request No. 6

Admit that under provision 3 of the settlement agreement you agreed to:

"…cease and refrain from any and all use of the GOLDEN NUGGET name, marks, and logos, and any al all similar variations thereof, alone or in combination with any other letters, words, letter strings, phrase or designs, in commerce or in connection with any business or for any purpose, including, but not limited to, all advertising, marketing, and public relations…"

Request No. 7

Admit that you failed to abide by your agreement delineated in provision 3 of the settlement agreement.

Request No. 8

Admit that you used the name THE NUGGET for your business at The Ohio Property after December 28, 2012.

Request No. 9

Admit that in the May 20, 2013, article attached as exhibit 3 to plaintiff's application for temporary restraining order and motion for preliminary injunction, the CantonRep.com referred to your business as the "Golden Nugget."

Request No. 10
Admit that on December 28, 2012, your counsel sent the letter attached as exhibit 2 to plaintiff's application for temporary restraining order and motion for preliminary injunction.

Request No. 11

Admit that you did not complete all of the changes delineated in the December 28, 2012 letter sent out by your counsel.

Plaintiff intended the requests for admission to establish that the defendants failed to abide by the settlement agreement and continued to use the Golden Nugget mark. These determinations are relevant to the plaintiff's claims, and therefore are within the scope of Rule 26(b)(1).

James C. Mahan
U.S. District Judge

- 6 -

1    Defendants have not filed a motion to withdraw or amend the admissions. Therefore, the requests for admission are deemed admitted. For the purposes of the instant motion for summary judgment, it is conclusively established that the defendants failed to abide by the settlement agreement and continued to use the Golden Nugget name after December 28, 2012.

Defendants argue that the requests, as admitted, do not merit summary judgment because they create more issues of fact than they resolve. (Doc. # 40). This argument falls short because the requests for admission, as admitted, determine that the defendants breached the settlement agreement, and continued to use the Golden Nugget mark in relation to its gaming services.

Therefore, the court must determine whether these admissions show that no genuine issue of material fact exists, and plaintiff is entitled to judgment as a matter of law.

b.  **Trademark infringement under 15 U.S.C. § 1114 (claim one)**

Under 15 U.S.C. § 1114, a defendant is liable in a civil action if they, without the consent of the registrant, use in commerce an imitation of a registered mark in connection with goods or services which is likely to cause confusion, mistake, or to deceive. *See* 15 U.S.C. § 1114 (2005). The general determination of liability under trademark law is the likelihood of confusion. *Id.*, 15 U.S.C. § 1125(a).

The Ninth Circuit has enumerated eight non-exclusive factors to determine whether customer confusion is likely. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The eight factors are; (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the mark; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product line. *Id.* "The list of factors is not a score-card – whether a party 'wins' a majority of the factors is not the point. Nor should '[t]he factors … be rigidly weighed; we do not count beans.'" *Dreamwerks Prod. Group v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 7 -

Ultimately, the court must decide whether the public is likely to be deceived or confused by the similarity of the marks. *New West Corp. v. NYM Co. of California, Inc.*¸ 595 F.2d 1194, 1201 (9th Cir. 1997).

Plaintiff owns the mark Golden Nugget and variants thereto. Plaintiff has obtained federal mark registrations for the Golden Nugget marks, including but not limited to:

a) Golden Nugget for casino and bar services (U.S. Reg. No. 1,554,155);

b) Golden Nugget for nightclub, bar, cabaret and casino services (U.S. Reg. No. 1,082,044);

c) Golden Nugget for casino services (U.S. Reg. No. 1,203,988); and

d) Golden Nugget for hotel and resort hotel services (U.S. Reg. No. 2,240,084) (Doc. # 1).

### i. Strength of the mark

The stronger a mark, the greater the protection it is accorded by trademark laws. *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011). Marks are classified as either: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Kendall-Jackson Winery*, *Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998).

Suggestive, arbitrary, and fanciful marks are inherently distinctive and strong, and do not require proof of secondary meaning to be protected. *Id.* "Arbitrary marks have no relevance to any feature or characteristic of a product." *Id.* at 1047 n.8. "Fanciful marks are the most distinctive marks of all; they involve a high degree of imagination." *Id.*

Golden Nugget is an arbitrary mark because it has no relevance to gaming services, apart from plaintiff's use of this mark for nearly seventy years in connection with its hotels and casinos. Plaintiff has built the Golden Nugget mark into a familiar mark in gaming. However, without the plaintiff's continued use since 1946, a person would not associate the Golden Nugget mark with hotels and casinos. Therefore, as an arbitrary mark, Golden Nugget is a strong mark and is protected. The court finds this factor weighs in favor of the plaintiff.

### ii. Proximity or relatedness of the goods

"For related goods, the danger presented is that the public will mistakenly assume there is association between the producers of the related goods, though no such association exists."

1   Sleekcraft, 599 F.2d 350. Generally, related goods are more likely than unrelated goods to
2   confuse the public as to the producers of the goods. *Brookfield Commc'ns v. West Coast Entm't*
3   *Corp.,* 174 F.3d 1036, 1055 (9th Cir. 1999). When virtually identical marks are used with
4   identical products or services, the likelihood of confusion follows. *Id.* at 1056.

5   Plaintiff argues that both parties' gaming services, specifically the slot machines, are
6   identical. (Doc. # 29). The Golden Nugget has become a recognizable name in the resort hotel
7   and casino industry nationwide. Further, plaintiff advertises in print, broadcast media, and on the
8   internet through the Golden Nugget website which is accessible world-wide. Plaintiff's extensive
9   use of the Golden Nugget mark has resulted in a mark that is distinctive and famous for hotel and
10  casino services.

11  Defendants offer services identical to those offered by the plaintiff. Plaintiff offers
12  gaming services to the patrons of the Golden Nugget hotels and casinos. Defendants operate an
13  establishment in Canton, Ohio, offering patrons identical gaming services. Further, both parties
14  appeal to the same customer, a person who enters an establishment to gamble.

15  The court finds that because the services are closely related, the likelihood of confusion
16  follows. This factor weighs in favor of the plaintiff.

17                 **iii. Similarity of the mark**

18  When considering the likelihood of confusion, similarity of the marks is a critical
19  question. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). The
20  combination of the features as a whole, judged in terms of their "appearance, sound, and
21  meaning," is the ultimate question in determining similarity. *Id.* at 1206. In comparing the marks,
22  they must be considered in their entirety and as they appear in the marketplace. *Id.* Similarity is
23  adjudged in terms of appearance, sound, and meaning. *Id.* Finally, similarities are weighed more
24  heavily than differences. *Id.*

25  Defendants use the exact same name for their gaming establishment as the plaintiff has
26  used since 1946. The name is identical in its appearance, sound, and meaning. The Golden
27  Nugget mark is arbitrary in that it has no relevance to a gaming establishment apart from the
28

**James C. Mahan**
**U.S. District Judge**

- 9 -

reputation developed by the plaintiff. Therefore, using the name in connection with a gaming establishment gives the mark an identical meaning.

Considered in its entirety, the defendants' use of the Golden Nugget mark is strikingly similar to the plaintiff's registered mark. As the mark appears in the marketplace of casino services, there is a high likelihood of confusion. The court finds this factor weighs in favor of the plaintiff.

### iv. Evidence of actual confusion

There is no requirement to provide evidence of actual confusion for trademark infringement. *Sleekcraft,* 599 F.2d at 353.; *see also Academy of Motion Pictures Arts and Sciences v. Creative House Productions*, *Inc.,* 944 F.2d 1446, 1456 (9th Cir. 1991). Likelihood of confusion will be found whenever consumers are likely to assume that a mark is associated with another source or sponsor because of similarities between the two marks. *Id.* The lack of evidence does not affect the overall analysis because of the difficulty in obtaining it, but any finding of actual evidence "is weighed heavily [against the defendant]." *Sleekcraft*, 599 F.2d at 353.

Plaintiff was unable to provide evidence of actual confusion. This lack of evidence does not affect the overall analysis because of the difficulty in obtaining such evidence.

### v. Marketing channels used

"Convergent marketing channels increase the likelihood of confusion," especially when the "general class of purchasers of the parties' respective products is the same." *Sleekcraft*, 599 F.2d at 353.

Plaintiff alleges they advertise world-wide. (Doc. # 29). Plaintiff further argues that because the services and advertising targets are similar, that the markets overlap. *Id.*

Both parties direct their advertising toward individuals who have an interest in gaming. The typical patron for both parties is an individual who is willing to travel to an establishment and gamble. Due to the identical nature of both parties' gaming establishments, patrons of the defendants' establishment are likely to confuse the defendants' marketing with that from the

1    plaintiff. Due to this similarity, the advertising markets overlap and the court finds this factor
2    weighs in favor of the plaintiff.

### vi. Type of good and degree of care likely to be exercised by the consumer

"In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353. When the goods are expensive, the buyer can be expected to exercise greater care in their purchase, although confusion may still be likely. *Id.*

The typical patron is the same for both parties. That is, a person who is willing to travel to a casino and spend money gambling. A typical patron of a gaming establishment is unlikely to exercise the degree of care discussed in *Sleekcraft*. *Id.* It is unlikely such an individual would exercise a high degree of care in determining whether the defendants' establishment is actually associated with the plaintiff's famous casinos. The court finds there is a high likelihood of confusion among the typical buyer with regard to the Golden Nugget mark in connection with casino services. This factor weighs in favor of the plaintiff.

### vii. Defendants' intent in selecting the mark

When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public. *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993). However, a party claiming trademark infringement need not prove intent to deceive because intent is not a necessary element of trademark infringement. *Id.*

Plaintiff's use of the Golden Nugget mark since 1946 has built an international reputation. The court finds it highly unlikely that the defendants had no knowledge of plaintiff's GNLV mark when they adopted and began using the mark for their establishment in Ohio.

Additionally, in the December 2012, settlement agreement between the parties, defendants expressly acknowledged that they had no rights in or to a Golden Nugget mark for gaming services. Due to the fact defendants' acknowledged they had no rights in the mark but continued to use the mark, the court finds that the defendants intended to use and profit from the

James C. Mahan
U.S. District Judge

- 11 -

plaintiff's Golden Nugget mark and presumes an intent to deceive the public. This factor weighs in favor of the plaintiff.

### viii. Likelihood of Expansion

A strong likelihood that either party may expand his business to compete with the other favors a finding of infringement. *Sleekcraft,* 599 F.2d at 354. When goods are closely related, any expansion is likely to result in direct competition. *Id.*

The article from the Canton Repository reported that the defendants' establishment was raided by the I.R.S. In that raid, the I.R.S. confiscated dozens of slot-like machines. It is unlikely a gaming establishment would expand after such a raid. The court finds there is not a strong likelihood of expansion by the defendants. This factor weighs in favor of the defendants

The court finds that no genuine issues of material fact remain on the question of likelihood of confusion between the plaintiff's registered mark and the mark used by the defendants. As stated above, the *Sleekcraft* factors are not a scorecard. The court finds that the Golden Nugget mark is a strong mark and is protected. Further, the services offered by both parties are identical and the mark used by the defendants' is strikingly similar to plaintiff's protected mark. Despite the lack of evidence of actual confusion, the typical patron is unlikely to exercise a high degree of care, and is likely to confuse the defendants' mark with that of the plaintiff. Therefore, the court will grant the plaintiff's motion for summary judgment as to the trademark infringement claim.

### c. Unfair Competition under 15 U.S.C. § 1125(a) (claim two)

A claim for unfair competition under the Lanham Act exists when any person uses, in commerce, a mark in connection with any goods or services. *See* 15 U.S.C. § 1125(a)(1). Further, a claim exists if the use is to deceive as to the affiliation, connection, or association with another as to the origin, sponsorship, or approval of the goods or services. *Id.*

15 U.S.C § 1125(a) forbids the use of false designations of origins and false descriptions and representations in the advertising and sale of goods and services. *Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir. 1981). A complaint must allege merchandising practices "in the nature of, or economically equivalent to, palming off and/or misuse of trademarks and trade names. *Id.*

**James C. Mahan**
**U.S. District Judge**

- 12 -

"Palming off" or "passing off" is the selling of a good or service of one's own creation under the name or mark of another. *Id.* Express passing off occurs when an enterprise labels goods or services with a mark identical to that of another enterprise, or otherwise expressly misrepresents that the goods originated with another enterprise. *Id.*

Defendants' use of the Golden Nugget mark in connection with their establishment was a false designation as to the affiliation, connection, or association with the plaintiff. The defendants' were "passing off" the services of their own creation under the plaintiff's protected mark. The defendants' were benefitting from the reputation plaintiff has built using the Golden Nugget mark.

Therefore, the court will grant plaintiff's motion for summary judgment as to the unfair competition claim under 15 U.S.C. § 1125(a)(1).

### d. Common law trademark infringement (claim three)

At the heart of cases alleging common law trademark infringement are two questions. *A.L.M.N., Inv. v. Rosoff*, 757 P.2d 1319, 1321 (Nev. 1988). Has a protectable right been created? *Id.* And, has it been infringed? *Id.* Whether, and to what extent a trademark is protectable depends on its distinctiveness and strength. *Id.*

Plaintiff's federal registrations of the mark and strength of the mark establish a protectable interest. Plaintiffs have been in continuous and exclusive use of the Golden Nugget mark since 1946. The Golden Nugget mark has no connection with gaming services, apart from plaintiff's continued use and is therefore an arbitrary mark. As an arbitrary mark, it is strong and protected. The defendants' infringed this protectable right by using, without consent, the Golden Nugget mark in connection with their establishment. Therefore the court will grant the plaintiff's motion for summary judgment as to the common law trademark infringement claim.

### e. Breach of contract (claim seven)

"Because a settlement agreement is a contract, its construction and enforcement are governed by principles of contract law." *May v. Anderson*, 121 Nev. 668, 672 (Nev. 2005). In Nevada, "to succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3)

material breach by the defendants; and (4) damages. *Laguerre v. Nevada System of Higher Educ.,* 837 F.Supp.2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.")).

"Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds and consideration." May, 121 Nev. at 672. Whether a party has breached a contract and whether the breach is material are questions of fact. *Hoffman v. Eighth Judicial Dist. Ct.,* 90 Nev. 267, 270 (1974). A meeting of the mind exists when the parties have agreed upon the contract's essential terms. *Roth v. Scott*, 921 P.2d 1262, 1265 (Nev. 1996).

Plaintiff alleges that a valid contract existed when the parties executed and complied with material provisions of the settlement agreement. (Doc. # 34). In the settlement agreement, there was an offer, acceptance, meeting of the minds, and compensation. Plaintiff agreed to voluntarily dismiss the previous lawsuit, and the defendants agreed, and did pay sixteen thousand dollars to the plaintiff. The court finds this settlement agreement to be a valid contract.

Provision three of the settlement agreement provides that the defendants will "…cease and refrain from any and all use of the GOLDEN NUGGET name, marks, and logos, and any al all similar variations thereof …" (Doc. # 34)  It has been conclusively established that the defendants continued to use the Golden Nugget mark after the execution of the settlement agreement. Therefore, the defendants violated the agreement, resulting in a breach of contract.

Plaintiff suffered damages by having to file yet another lawsuit against the same defendants as a result of the defendants' breach of contract. Therefore, the court will grant the plaintiff's motion for summary judgment as to the breach of contract claim.

### f. Breach of the implied covenant of good faith and fair dealing (claim eight)

In Nevada, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Cont., Inc. v. Washoe Cnty.,* 784 P.2d 9, 9 (Nev. 1989). This implied covenant requires that parties "act in a manner that is faithful to the purpose of the contract and the justified expectations of the other party." *Morris v. Bank of Am. Nev.,* 886 P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted).

James C. Mahan
U.S. District Judge

1   A breach of the implied covenant of good faith and fair dealing occurs when the terms of
2   a contract are complied with but one party to the contract deliberately contravenes the intention
3   of the contract. *See Hilton Hotels v. Butch Lewis Prods*., 808 P.2d 919, 923 (Nev. 1991).

4   To prevail on a theory of breach of the covenant of good faith and fair dealing, a plaintiff
5   must establish: (1) plaintiff and defendants were parties to a contract; (2) defendants owed a duty
6   of good faith to the plaintiff; (3) defendants breached that duty by performing in a manner that
7   was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were
8   denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

9   The Nevada Supreme Court has held that good faith is a question of fact. *Consolidated*
10  *Generator-Nevada, Inc. v. Cummins Engine Co., Inc.,* 971 P.2d 1251, 1256 (Nev. 1998).
11  Whether the defendants breached the implied covenant of good faith and fair dealing is a
12  question that should be left to the jury, therefore, summary judgment is not appropriate.

13  The court will deny plaintiff's motion for summary judgment as to the breach of the
14  implied covenant of good faith and fair dealing claim.

15  **g.  Negligent and fraudulent misrepresentation (claims eleven & twelve)**

16  Under Nevada law, the plaintiff has the burden of proving each and every element of its
17  fraudulent misrepresentation claim. The plaintiff must prove by clear and convincing evidence:
18  (1) a false representation made by the defendants; (2) defendants' knowledge or belief that its
19  representation was false or that defendants had an insufficient basis of information for making
20  the representation; (3) defendants intended to induce plaintiff to act or refrain from acting upon
21  the misrepresentation; and (4) damage to the plaintiff as a result of relying on the
22  misrepresentation. *Barmettler v. Reno Air, Inc*., 956 P.2d 1382, 1386 (Nev. 1998).

23  Additionally, any claim for fraud must be plead with particularity under Federal Rule of
24  Civil Procedure 9(b). *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999). To meet this
25  standard, plaintiff must present details regarding the "time, place, and manner of each act of
26  fraud, plus the role of each defendant in each scheme." *Lancaster Com. Hosp. v. Antelope Valley*
27  *Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991).

28

**James C. Mahan**
**U.S. District Judge**

Plaintiff argues that the defendants falsely represented they were going to comply with the terms of the settlement agreement while simultaneously creating a new business entity which would continue to run as the Gold Nugget Arcade. (Doc. # 34). The court finds that the plaintiff relied upon the representations of the defendants when they voluntarily dismissed the previous lawsuit as a condition of the settlement agreement. Also, the court agrees that the plaintiff has suffered damages in that they were forced to bring yet another lawsuit against the same defendants. However, the plaintiff has not shown by clear and convincing evidence that the defendants had knowledge of the misrepresentation, or that they intended to induce the plaintiff to act upon the misrepresentation. This issue is a question of fact that should be left for the jury to decide.

Therefore, the court will deny the plaintiff's motion for summary judgment as to the negligent and fraudulent misrepresentation claim.

### 4. Conclusion

The unanswered requests for admission conclusively establish that the defendants failed to abide by the settlement agreement and continued to use the name Golden Nugget after December 28, 2012. Based on the unanswered requests for admissions, as well as the pleadings, the court will grant plaintiff's motions for summary judgment (docs. ## 29, 34) in part, and DENIES plaintiff's motions for summary judgment in part.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that petitioner's motion for summary judgment on claim one for trademark infringement under 15 U.S.C. §1114 (doc. # 29), is GRANTED.

IT IS FURTHER ORDERED that petitioner's motion for summary judgment on claim two for unfair competition under 15 U.S.C. § 125(a) (doc. # 29), is GRANTED.

IT IS FURTHER ORDERED that petitioner's motion for summary judgment on claim three for common law trademark infringement (doc. # 29), is GRANTED.

IT IS FURTHER ORDERED that petitioner's motion for summary judgment on claim seven for breach of contract (doc. # 34), is GRANTED.

**James C. Mahan**
**U.S. District Judge**

1    IT IS FURTHER ORDERED that petitioner's motion for summary judgment on claim
2  eight for breach of the implied covenant of good faith and fair dealing (doc. #34), is DENIED.
3    IT IS FURTHER ORDERED that petitioner's motion for summary judgment on claims
4  eleven & twelve for fraudulent and negligent misrepresentation (doc. # 34), are DENIED.
5    DATED November 18, 2014.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 17 -