UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GNLV, CORP., | Case No. 2:13-CV-943 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| T. WARREN ENTERPRISES, INC., et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Golden Nugget of Las Vegas' ("GNLV") motion for final judgment and damages. (Doc. # 46). Defendants T. Warren Enterprises Inc., Great Vibe Entertainment, Inc., Tracie Pastore, and Yabachushyanei Bennett, (collectively "defendants") filed a response. (Doc. # 49).

I.   **Background**

Plaintiff GNLV is a Nevada corporation that operates the "Golden Nugget" resort hotel casinos in Las Vegas, Nevada and Laughlin, Nevada. Since the Golden Nugget opened in 1946, plaintiff and its predecessors-in-interest have continuously used the Golden Nugget marks in connection with their hotels, casinos, and related services.

Defendant T. Warren Enterprises, Inc., f/k/a Golden Nugget Arcade, Inc., is an Ohio corporation that formerly operated a casino in Canton, Ohio. Defendant Great Vibe Entertainment, Inc. is an Ohio Corporation that uses d/b/a "Golden Nugget" and operates the establishment at issue in this case.

This case stems from a previous lawsuit concerning trademark infringement. The parties reached a settlement agreement on December 28, 2012. Plaintiff later filed this suit alleging that

James C. Mahan
U.S. District Judge

defendants breached the settlement agreement. This court found that defendants breached the 2012 settlement agreement by continuing to use the "Golden Nugget" mark. (Doc. # 45).

Settlement agreements typically contain a damages provision. However, here, in exchange for defendants' promise to immediately and permanently adhere to all terms of the settlement agreement, plaintiff agreed to voluntarily dismiss all claims. (Doc. # 46). The relevant portion of the settlement stated that defendants, and their successors in interest, would never use "Golden Nugget" or a similar name in relation to gaming services. (Doc. # 46).

Following the settlement, plaintiff alleges that defendants applied for a zoning permit under the insignia "Great Vibe Entertainment (DBA) ~~The Nugget~~ Arcade" (The Nugget was later crossed out). (Doc. 46). Further, on May 20, 2013 the IRS confiscated 222 slot machines from defendants' illegal gaming arcade. Following the IRS raid, an article from a Canton, Ohio newspaper ran a headline stating the name "Golden Nugget" several times. (Doc. # 46). A picture in the article showed a door with the name "The Nugget" written on it. (*Id.*).

Around July 17, 2013, the United States filed a complaint of forfeiture against defendants. The United States identified "Golden Nugget bank accounts" into which defendants deposited funds, despite the terms of the settlement. Thus, plaintiff requests that this court award damages under trademark infringement remedies and actual damages under the Lanham Act for breach of the settlement agreement.

Plaintiff now moves for final judgment and order for damages on the following claims: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125; (3) common law trademark infringement; and (4) breach of contract. Plaintiff's motion seeks a permanent injunction and damages in favor of the four claims for which it received summary judgment.

Plaintiff filed a twenty page motion. Defendants, whom have since gone out of business as a result of the IRS raid, filed a three page response.

Plaintiff seeks $12,116,000.00 in damages, $102,491.29 in attorney's fees and costs, and $300,000.00 in statutory damages under the Lanham Act. *See* 15 U.S.C. § 1117(a). Plaintiff seeks

James C. Mahan
U.S. District Judge

- 2 -

a total of $12,518,491.29. Defendant counters that principles of equity demand that the court enter judgment in favor of plaintiff for $1. (Doc. # 49).

II.  **Discussion**

   a. *Actual damages for breach of settlement*

Under the Lanham Act, plaintiff can request actual damages in the form of (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.*

"If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.*

Profits are not granted automatically, but are granted in light of equitable considerations. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993). "Where trademark infringement is deliberate and willful, [the Ninth Circuit] has found that a remedy no greater than an injunction slights the public." *Id.* (citing *Playboy Enter. v. Baccarat Clothing Co.,* 692 F.2d 1272, 1274 (9th Cir. 1982)) (internal quotations emitted). This rule applies only where infringement is "willfully calculated to exploit the advantage of an established mark." *Id.*

When awarding profits and damages, the intent of the infringer is considered relevant evidence. *Maier Brewing Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117, 123 (9th Cir. 2010). However, the purpose of § 1117 is equity and the plaintiff is not entitled to a windfall. *Bandag, Inc. v. Al Bolser's Tire Stores,* 750 F.2d 903, 918 (Fed. Cir. 1984).

Plaintiff elected to request actual damages in the form of defendants' profits. Plaintiff requests $11,211,000.00 in actual damages from profits. (Doc. # 46).

Plaintiff calculated defendants' profits based on its own experiences in the gaming industry. Based on its own records, plaintiff estimates that it makes $200 "average daily gaming machine profit." (Doc. # 46). Plaintiff believes defendants' made approximately $100 per day because defendants' casino was likely not as successful as the GNLV. (Doc. # 46).

Defendants' had 222 gaming machines in their illegal gaming hall in Canton, Ohio under the name Golden Nugget. (Doc. # 46-4). $100 x 222 machines equals $22,200.00 profits per day for defendants. (Doc. # 46-2). Defendants' used the GNLV name from January 2012, through May 2013, when the IRS removed the machines (totaling roughly 505 days). (*Id.*).

Plaintiff calculated defendants' profits at $11,211,000.00 ($22,200 x 505 days). (*Id.*). Plaintiff further claims that because defendants' assets totaled only $1.5 million when seized, but they willingly risked criminal prosecution, that defendants reasonably made millions of dollars over the five years they operated. (*Id.*). Thus, plaintiff asserts that more than $11 million in damages is a reasonable calculation of defendants' profits.

Defendants counter that plaintiff has no evidence of loss of profits due to the small Ohio casino. (Doc. # 49). Defendants further assert that the name "The Nugget" was inadvertently left on only one door and that otherwise defendants adhered to the terms of the settlement agreement. (*Id.*).

Defendants asserts that the damages calculated by plaintiff are highly speculative and that comparing the foot traffic and revenue of a Las Vegas casino to a small Ohio casino is improper. (*Id.*). Moreover, defendants assert that principles of equity favor defendants, as their casino is now completely out of business and one defendant filed bankruptcy. (*Id.*).

Plaintiff's calculation of $100 per slot machine per day is highly speculative and thus this court cannot award damages based on these figures. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) (citing *Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636, 642 (D. C. Cir.1982) ("any award based on plaintiff's damages requires some showing of actual loss")); *see also Invicta Plastics (USA) Ltd. v. Mego Corp.,* 523 F. Supp. 619, 624 (S.D.N.Y. 1981) ("Damages will not be awarded in the absence of credible evidence demonstrating injury to the plaintiff from defendant's sales.").

Plaintiff did not provide the court with any figures to calculate damages apart from plaintiff's own records. The court is not convinced by plaintiff's argument that a small Ohio casino generates profits similar to a popular Las Vegas casino, and it finds plaintiff's request of over $11 million excessive. While the court may award partial damages at its discretion, the court declines

James C. Mahan
U.S. District Judge

- 4 -

to do so in light of other relief granted to the plaintiff. Accordingly, the court denies plaintiff's request for $11,211,000.00 in damages.

### b. Damages for trademark infringement and unfair competition

Under the Lanham Act, when the use of the counterfeit mark is willful, plaintiff is entitled to statutory damages. Statutory damages awards are limited to "not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c). "If a plaintiff elects to recover statutory damages, the court has wide discretion in determining the amount of statutory damages to be awarded. *Ploom, Inc. v. Iploom, LLC,* No. 13-CV-05813 SC, 2014 WL 1942218, at *5 (N.D. Cal. May 12, 2014) (citing *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham,* 259 F.3d 1186, 1194 (9th Cir. 2001)).

To avoid duplicative damages, plaintiff requests statutory damages of $100,000 for each trademark infringement claim under § 1117(c) of the Lanham Act for a total of $300,000. (Doc. # 46). Plaintiff asserts that $300,000 is reasonable due to the lack of discovery by defendants. (*Id.*). Throughout discovery, defendants claimed they were unable to access their documents due to the IRS raid. This was proven false as defendants could request copies of documents and other discoverable materials. (Doc. # 46-B).

Defendants make no argument as to why the court should not award plaintiff $300,000 statutory damages. Thus, the court finds that the requested statutory damages are reasonable due to failure by defendants' to cooperate during discovery. (Doc. # 46). Accordingly, plaintiff's claim for $300,000 in statutory damages under 15 U.S.C. § 1117(c) is granted.

### c. Treble damages

Under the Lanham Act, when a defendant intentionally infringes upon a trademark, plaintiff is entitled to three times the damages, unless the court finds extenuating circumstances. 15 U.S.C. § 1117(b). However, while a judge may award up to three times the damages, the Lanham Act expressly forbids awarding damages to punish an infringer. *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1114 (9th Cir. 2012).

James C. Mahan
U.S. District Judge

- 5 -

"If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.* "Such sum . . . *shall constitute compensation and not a penalty.*" *Id.* (emphasis added).

Plaintiff seeks $900,000.00 jointly and severally from the defendants for trademark infringement and unfair competition due to defendants' "lengthy and lucrative infringement." (Doc. # 46).

The court finds that an enhanced statutory damages award of $900,000.00 is punishment and not adequate compensation for plaintiff under the circumstances. *See Skydive Ariz., Inc.*, 673 F.3d at 1114 ("because the district court's decision to enhance the damages award hinged upon punishing the willful conduct . . . we reverse the . . . enhancement"). "Indeed, enhancement [of damages] is only available to ensure that the plaintiff receives compensation." *Id.* (citing *BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081, 1096 (7th Cir.1994) (internal quotation omitted).

Defendants willfully infringed upon plaintiff's mark. However, attaching nearly a million dollars in statutory damages, largely based on one single article that ran in a small Ohio newspaper, would be punitive. Accordingly, this court denies plaintiff's request for $900,000 treble damages for use of a counterfeit mark.

    d.   Permanent injunction

Under 15 U.S.C. § 1116 of the Lanham Act, the court may grant injunctive relief for the trademark holder in order to prevent further infringement. "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

Plaintiff established trademark infringement following the settlement agreement. Defendants agree that a permanent injunction is an appropriate, equitable remedy. (Doc. # 49). Accordingly, the court grants plaintiff's request for a permanent injunction preventing defendants'

James C. Mahan
U.S. District Judge

- 6 -

use of the "Golden Nugget" name, mark, logo, and any mark confusingly similar to "Golden Nugget."

### e. Attorney's fees and costs

Under Federal Rule of Civil Procedure 54(d), a prevailing party may seek costs and attorney's fees. Fed. R. Civ. P. 54(d)(1)–(2). A party seeking fees must: (i) file the motion no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (iii) state the amount sought or provide a fair estimate of it; and (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made. Fed. R. Civ. P. 54(d)(2).

Here, plaintiff alleges it is entitled to $102,491.29 in costs and attorney's fees. However, plaintiff's failed to file for attorney's fees within the fourteen day period under Rule 54(d)(B)(i). The court released its case dispositive judgment on November 18, 2014. Plaintiff's filed a motion for final judgment and damages on January 26, 2015, which was more than a month outside the fourteen day window allotted under Rule 54(d)(B)(i).

Accordingly, plaintiff's request for $102,491.29 in attorney's fees and costs shall be denied.

### f. Corrective advertising

An award of corrective damages stands to make the plaintiff whole again by allowing plaintiff to recover costs of advertising to dispel confusion due to defendants' infringement. *Adray v. Adry-Mart, Inc.*, 68 F.3d 362 (9th Cir. 1995), *amended* 76 F.3d 984 (9th Cir. 1996). A plaintiff need not show a specific measure of harm to its goodwill and reputation in order to recover corrective damages. *Id.* at 988.

Plaintiff concedes the difficulty in ascertaining the damages it has suffered. (Doc. # 46). Provided that plaintiff seeks a nominal amount of $5,000 in light of the uncertainty of the actual damages suffered by plaintiff, the court finds this amount appropriate.

. . .

James C. Mahan
U.S. District Judge

### III. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Golden Nugget of Las Vegas's motion for final judgement and order of damages (doc. # 46) be, and the same hereby is, GRANTED with respect to plaintiffs' claim for $300,000 in damages under 15 U.S.C. § 1117(c), a permanent injunction, and $5,000 in corrective advertising, and DENIED with respect to $11,211,000.00 in actual damages, $102,491.29 in attorney's fees and costs, and $900,000 in treble damages.

IT IS FURTHER ORDERED that plaintiff shall submit an appropriate judgment within fourteen days of the issuance of this order.

DATED July 1, 2015.

_____
UNITED STATES DISTRICT JUDGE